```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                           TAMPA DIVISION

GOETZ D. VEHSE,

        Plaintiff,
v.                                    Case No. 8:16-cv-599-T-33JSS

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

        Defendant.
_____/
```

**ORDER**

This cause is before the Court pursuant to Defendant Liberty Mutual Fire Insurance Company's Motion to Exclude Expert Opinion of Sunil Gulati, or in the Alternative, for a Daubert Hearing (Doc. # 41), which was filed on December 14, 2016. Plaintiff Goetz Vehse filed a Response in Opposition to the Motion (Doc. # 48) on January 17, 2017, and Liberty Mutual filed a Reply (Doc. # 49) on January 25, 2017. For the reasons that follow, the Court denies the Motion.

I. **Background**

Vehse asserts that Liberty Mutual breached the terms of a homeowners insurance policy with respect to sinkhole damage in this removed case. In Vehse's Amended Complaint, filed May 13, 2016, he explains that he sustained sinkhole damage to his New Port Richey, Florida, home in July of 2010, when his home was insured by Liberty Mutual. (Doc. # 18 at ¶ 7). Liberty

Mutual performed "the recommended repairs necessary to stabilize the land and repair the foundation." (Id. at ¶ 9). All repairs were completed as of February 16, 2011. (Id.). In 2012, Liberty Mutual declined to continue to insure Vehse's property. (Doc. # 41 at 1).

Years later, in 2015, Vehse observed "damage to the Property that was not repaired, had re-appeared, and was worsening." (Doc. # 18 at ¶ 10). Vehse alleges that the repairs Liberty Mutual previously made to his property during the 2010 - 2011 remediation time-frame were negligently undertaken. Vehse sought coverage from Liberty Mutual, but Liberty Mutual denied coverage arguing the damage discovered in 2015 occurred outside of any Liberty Mutual policy period. (Doc. # 41 at 1).

Vehse now seeks damages for breach of contract, asserting in Count One of his Amended Complaint that:

> Defendant has materially breached the Policy by: (a) failing to stabilize the land or repair the foundation following a verified sinkhole loss; or failing to pay the policy limits without reduction for the amounts paid for the prior repairs. (b) failing to adjust the subsurface remediation in consultation with the Plaintiff as required by the sinkhole endorsement. (c) refusing to pay all amounts due and owing to the Plaintiff under the policy of insurance.

(Doc. # 18 at ¶ 17). In Count Two, Vehse contends that Liberty Mutual breached the insurance contract because: "Defendant undertook a repair of Plaintiff's Property. By virtue of Defendant's purported election to repair under the above-referenced insurance contract, a new repair contract arose by implication of law, under which Defendant was bound to restore Plaintiff's home to a pre-loss condition within a reasonable time." (Id. at ¶¶ 27-28).

On May 23, 2016, Liberty Mutual filed its Answer and Affirmative Defenses to Vehse's Amended Complaint. (Doc. # 20). Among other defenses, Liberty Mutual claims that Vehse's suit "is barred by accord and satisfaction" because "Liberty Mutual has tendered all amounts due under the Policy, and these amounts were accepted by the Plaintiff." (Id. at 4). Liberty Mutual also contends that Vehse "did not suffer damage during the Policy Period" with respect to the damages Vehse is now claiming. (Id.).

The case is set for a jury trial during the Court's May 2017 trial term. (Doc. # 14). At this juncture, Liberty Mutual seeks an Order excluding Vehse's expert witness, Sunil Gulati, or in the alternative, a Dabert hearing to determine the admissibility of Gulati's opinions. Liberty Mutual has filed Gulati's January 11, 2016, expert report, which includes

-3-

a discussion of the damage to the property, a $103,840.00 estimate for repairs, an appraisal of the property, photographs of the property, architectural drawings, handwritten drawings, and other documents. (Doc. # 41-1). Liberty Mutual has also supplied the Court with the December 6, 2016, deposition transcript of Gulati, as well as other documents. (Doc. # 41-2). At the Court's direction, Vehse filed Gulati's CV. (Doc. # 54).

After due consideration, the Court determines that it is not necessary to hold a <u>Daubert</u> hearing. <u>See</u> <u>City of Tuscaloosa v. Harcros Chems., Inc.</u>, 158 F.3d 548, 565 at n.21 (11th Cir. 1998)("<u>Daubert</u> hearings are not required by law or by rules of procedure" although they may be "fruitful uses of the court's time and resources in complicated cases involving multiple expert witnesses"). Based on the detailed submissions provided by the parties, the Court denies the Motion.

**II.  Discussion**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help

> the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods, and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 is a codification of the Court's landmark case of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). In Daubert, the Court described the gatekeeping function of the district court to ensure expert testimony and evidence "is not only relevant, but reliable." Id. at 589. As stated in the Advisory Committee Notes accompanying Rule 702 of the Federal Rules of Evidence, "A review of the case law after Daubert shows that the rejection of expert testimony is the exception rather than the rule." See Advisory Committee Notes to the 2000 Amendment to Rule 702. In addition, the trial judge is afforded broad discretion in deciding Daubert issues. See Kuhmo Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

In Rink v. Cheminova, Inc., 400 F.3d 1286 (11th Cir. 2005), the Eleventh Circuit set forth a three-pronged approach for doing so:

> To fulfill their obligation under Daubert, district courts must engage in a rigorous inquiry to determine whether: (1) the expert is qualified to

-5-

> testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. at 1291 (internal citations omitted). The party offering an expert has the burden of satisfying each of these elements by a preponderance of the evidence. Id. at 1292; see also Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

### A.   **Gulati is Qualified**

The first question under Daubert is whether Gulati is qualified to testify competently regarding the matters he intends to address. Harcros Chems., Inc., 158 F.3d at 563. "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" Clena Invs., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 660 (S.D. Fla. 2012)(quoting Jack v. Glaxo Wellcome, Inc., 239 F. Supp. 2d 1308, 1314–16 (N.D. Ga. 2002)). "This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not

admissibility." Id. (citations omitted)(internal quotation marks omitted; alteration in original)).

Gulati obtained his Bachelor of Science and his Master of Science at the Illinois Institute of Technology. (Doc. # 54-1). He is a Registered Professional Engineer, Registered Environmental Property Assessor, and Certified Florida Environmental Assessor. (Id.). Gulati "has over 20 years experience in conducting Geotechnical investigations including sinkhole evaluations, Ground Penetrating Radar (GPR) testing and analysis, geotechnical design, environmental consulting, construction materials testing and, supervision and roadway construction management." (Id.). In the last five years, Gulati has "supervised the completion of over 1500 sinkhole evaluation projects" in Florida. (Id.).

Gulati's CV, relevant work experience, and familiarity with the sinkhole remediation industry render him sufficiently qualified to offer expert testimony in this case. "[A]fter an individual satisfies the relatively low threshold for qualification, the depth of one's qualification may be the subject of vigorous cross-examination." QBE Ins. Corp. v. Jorda Enters., Inc., No. 10-21107, 2012 WL 913248, at *3 (S.D. Fla. Mar. 16, 2012). In addition, the Court observes that

another court has found Gulati to be qualified as an expert in a similar context. See Foster v. Cotton States Mut. Ins. Co., No. 5:12-cv-150-Oc-34PRL, 2013 U.S. Dist. LEXIS 194435, at *3 ("Regarding qualifications, Mr. Gulati is a licensed geotechnical engineer with twenty years of experience in classifying soils as part of more than 1500 sinkhole evaluation projects.").

### B. Gulati's Methodology is Reliable

The thrust of Liberty Mutual's Daubert challenge is that Gulati's methodology is scientifically unreliable. Liberty Mutual points to the following statement in Gulati's expert report, and contends that it is unsupported and unfounded: "The subject structure was built in 2000, and the homeowner first noticed damages recently. The subject structure is still underlain by karst conditions as **the sinkhole remediation program implemented by RCG has been deficient**." (Doc. # 41-1 at 11)(emphasis added).[1]

---

[1] During his deposition, Gulati explained that "RCG" is Rimkus Consulting Group, Inc. – the Company that completed repairs to the home pursuant to Vehse's claim in 2010. (Gulati Dep. Doc. # 41-2 at 60). Gulati also explains that "karst condition is where sinkhole activity has gone through dissolution and that condition is still there. Means dissolved. Limestone conditions are still present." (Id. at 40).

-8-

Liberty Mutual seeks "to exclude Mr. Gulati's opinion because Mr. Gulati did not collect or record reliable data as the basis for his opinion, and the opinion itself is a conclusion that is not supported by logic or science." (Doc. # 49 at 1-2).  As an example, Liberty Mutual "questions Mr. Gulati's lack of precision in describing where one of his standard penetration test borings was performed, and how Mr. Gulati went from describing soil samples recovered during the boring as 'possible grout' to definitively calling the sample 'grout.'" (Id. at 4).

Rather than demonstrating that Gulati's expert opinion is unsupported and unreliable, the arguments Liberty Mutual present have simply identified some areas of concern that may be brought out during cross examination.  That Liberty Mutual disagrees with Gulati's opinion is not a basis for striking Gulati's opinion.  Rather, Liberty Mutual should be prepared to probe these matters further through the adversarial system, such as with a vigorous cross examination.  In Taylor, Bean & Whitaker Mortgage Corp. v. GMAC Mortgage Corp., No. 5:05-cv-260-Oc-GRJ, 2008 U.S. Dist. LEIS 125076, at *18 (M.D. Fla. Aug. 12, 2008), the court noted:

> [T]hese arguments go more to the weight of the evidence, than the admissibility of the evidence

> under Daubert. The Court need not determine that the expert [defendant] seeks to offer into evidence is irrefutable or certainly correct. The certainty and correctness of [the expert's] opinion will be tested through cross-examination and presentation of contrary evidence and not by a Daubert challenge. Indeed the Court's role as gatekeeper is not intended to supplant the adversary system or the role of the jury.

Id.

Liberty Mutual likewise maintains:

> Mr. Gulati may have found sinkhole conditions in January 2016 at Plaintiff's Property, but Mr. Gulati cannot date the activity. Nor can anyone else. This means that the conditions could have occurred, as Mr. Gulati put it, "thousands of years ago, or more recently after the 2011 repairs. If Mr. Gulati cannot determine how long the purported sinkhole conditions have existed, he cannot link the sinkhole conditions to the repairs performed in 2011. Accordingly, Mr. Gulati's finding of purported sinkhole conditions in 2016 does not support the assertion that the repairs in 2011 were implemented deficiently.

(Doc. # 41 at 7)(internal citation omitted).

The court in Block 60 Holdings LLC v. Southern Owners Insurance Company, No 3:13-cv-1397-J-34PDB, 2015 U.S. Dist. LEXIS 5572 (M.D. Fla. Jan. 16, 2015), rejected a similar argument. There, the insurance company raised a Daubert challenge to the opinions of the plaintiff's expert, including the opinion that sinkhole activity damaged the plaintiff's property in 2007, based on data collected in 2013. The court held that the expert opinions in question were "sufficiently

-10-

reliable to satisfy the requirements of Daubert and Rule 702" and further iterated:

> Southern-Owners is free to cross-examine [the experts], much like it did at their depositions, about the effects of a drought, tropical storm, and the passage of time between the alleged sinkhole activity and [the] collection of data upon which both [experts] rest their conclusions. However, such questions do not render their scientific opinions unreliable. See Daubert, 509 U.S. at 590 ("[I]t would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are not certainties in science."). The Court concludes that Southern-Owners' questions regarding the experts' methodology are better resolved through the adversary system. See id. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). While [the experts] may not be able to conclude with absolute certainty that sinkhole activity was present in 2007, they have done so to a reasonable degree of certainty based on [the] reports of damage, the recorded observations of damage to the property, the data . . . collected, their educational training and their practical experience as engineers conducting subsidence investigations. This basis is sufficient to satisfy the threshold reliability requirement.

Id. at *6.

The Court reaches a similar finding. Gulati's extensive experience and his detailed expert report present a reasonably reliable foundation for the presentation of his expert opinion. The Court agrees with Vehse that Liberty Mutual

-11-

"appears to attack the opinions [of the expert] as opposed to the methodology." (Doc. # 48 at 2).  Liberty Mutual has not convinced the Court that Gulati's opinion, including his methodology, is unreliable.

### C. <u>Gulati Will Assist the Trier of Fact</u>

Expert testimony is helpful to the trier of fact "if it concerns matters that are beyond the understanding of the average lay person." <u>United States v. Frazier</u>, 387 F.2d 1260, 1262 (11th Cir. 2004). In other words, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." <u>Id.</u> at 1262–63.

Gulati's deposition and the parties' submissions are replete with references to "chemical grouting," "slurry grout," "deep cement grouting," "weight of hammer condition," "geotechincal conditions" and "differential settlement," among other specialized terms. (Gulati Dep. Doc. # 41-2 at 10, 12, 19, 26, 35).  These phrases may be commonplace in the insurance industry, especially in the context of sinkhole claims.  However, the average lay person is likely unfamiliar with some or all of these designations.  In addition, the Court finds that even the most savvy juror could benefit from scientific testimony regarding the geological forces that

-12-

create sinkholes and the techniques that are used to remediate sinkhole damage. Accordingly, the Court finds that Gulati's testimony will assist the trier of fact. The Motion is thus denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

Defendant Liberty Mutual Fire Insurance Company's Motion to Exclude Expert Opinion of Sunil Gulati, or in the Alternative, for a Daubert Hearing (Doc. # 41) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>22nd</u> day of February, 2017.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE