UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GOETZ D. VEHSE,

      Plaintiff,

v.                                    Case No. 8:16-cv-599-T-33JSS

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

      Defendant.
_____/

## ORDER

    This cause is before the Court pursuant to Defendant
Liberty Mutual Fire Insurance Company's Motion for Summary
Judgment (Doc. # 42), filed on December 14, 2016. Plaintiff
Goetz Vehse filed a Response in Opposition to the Motion for
Summary Judgment (Doc. # 46) on January 17, 2017, and Liberty
Mutual filed a Reply (Doc. # 51) on January 25, 2017. The
Court grants the Motion for the reasons that follow.

## I.   Preliminary Discussion

    On February 23, 2017, this Court entered an Order
explaining that Vehse's response to Liberty Mutual's Motion
for Summary Judgment was procedurally deficient. (Doc. # 56).
The Court noted that Liberty Mutual's "Motion  for Summary
Judgment fully complies with the undersigned's directives
regarding a Statement of Material Facts. Specifically,
Liberty Mutual outlines 35 specific Material Facts." (Id. at

1).  However, Vehse's Response to the Motion for Summary Judgment "is a 'non-response' when it comes to either admitting or denying Liberty Mutual's factual contentions." (Id. at 2).  The Court's practices and procedures, which are prominently displayed on the Court's website, require a party opposing a Motion for Summary Judgment to

> **include a specifically captioned section titled, "Response to Statement of Material Facts."  The opposing party's response must mirror the statement of material facts by admitting and/or denying each of the moving party's assertions in matching numbered paragraphs. Each denial must set forth a <u>pinpoint</u> citation to the record where the fact is disputed.  Although the opposing party's response must correspond with the paragraph scheme used in the statement of material facts, the response need not repeat the text of the moving party's paragraphs.  In deciding a motion for summary judgment, <u>the Court will deem admitted any fact in the statement of material facts that the opposing party does not specifically controvert, provided that the moving party's statement is supported by evidence in the record.</u>**

(Id.).

Here, the Court warned Vehse that it would be acting well within its discretion to grant Liberty Mutual's Motion for Summary Judgment based on Vehse's deficient response, but in an abundance of fairness, granted Vehse the opportunity to conform to the Court's procedures.  The Court directed Vehse "to file a submission admitting or denying Liberty Mutual's

factual allegations, with citation to the record, by February 28, 2017." (Id. at 3).   Vehse did not file anything in response to the Court's Order.   Therefore, the Court finds that Vehse does not oppose Liberty Mutual's Statement of Material Facts.   A truncated version of those facts follow.

## II.   <u>Undisputed of Material Facts</u>

Liberty Mutual issued Vehse a homeowners insurance policy # H32-251-404160-100 3 (the 2010 Policy), effective April 12, 2010, to April 12, 2011, for Vehse's home in New Port Richey, Florida. (Doc. # 42-2). The 2010 Policy states that Liberty Mutual will pay for necessary repairs in case of a sinkhole loss that occurs during the effective period. (Id. at 31-32).

On July 20, 2010, adjuster Jeff Pyatt, reported a possible sinkhole claim on behalf of Vehse to Liberty Mutual. (Van Hooven Aff. Doc. # 42-3 at ¶ 5).   Liberty Mutual, in turn, retained Rimkus Consulting Group, Inc., an independent engineering firm, to investigate Vehse's claim. (Id. at ¶ 6). Rimkus issued a Report dated October 28, 2010, concluding that sinkhole activity existed at Vehse's property and recommended a repair protocol consisting of limited mobility displacement grouting, underpinning of the structure, and polyurethane injections. (Doc. # 42-4).

Rimkus's 2010 Report contained several limitations, including:

> Please be aware that the grouting program is designed and intended to treat only for sinkhole activity. The grouting program is not intended to treat or remediate other detrimental soil conditions that may or may not exist at the site such as buried debris, organic material, expansive (shrink/swell) clays or improper foundation design problems. The homeowner should be aware that compaction grouting may induce additional settlements and additional cracking of the structure before deep soil conditions are stabilized.
> . . . .
> [I]t should also be noted that portions of the observed damage are due to normal settlement, material characteristics, deterioration due to age, etc., and are unrelated to sinkhole activity. As such, it is unrealistic to expect that cracks and separation will never again form in the building after the sinkhole has been remediated, regardless of what method of remediation is performed.

(Id. at 27, 29).

Liberty Mutual identified several available contractors to perform the required repairs, and solicited bids for the work. (Van Hooven Aff. Doc. # 42-3 at ¶ 2). Liberty Mutual obtained bids from NEC Keystone, Inc., Earth Tech, LLC, and L.R.E. Ground Services, Inc. (Id. at ¶ 8). Vehse did not choose any contractors suggested by Liberty Mutual. Instead, Vehse retained a company that he located and selected on his own, RAB Foundation Repair, LLC. (Doc. # 42-5). The RAB Foundation Contract is dated November 17, 2010, and specifies:

-4-

"OBJECTIVE: RAB will provide sinkhole remediation and/or foundation repair services [hereinafter referred to as 'The Work'] at the above-referenced property using the Injection/Pressure Pier and/or Compression Grout System. No purpose, expressed or implied, other than to stabilize the soil, is intended." (Id. at 1).

RAB performed the repairs Rimkus recommended beween January and April of 2011, and Rimkus monitored the repairs, as reflected in Rimkus's Report of Findings dated June 9, 2011. (Doc. # 42-6). That Report noted that RAB completed the subsurface grouting program, steel underpinning, and polyurethane injections as recommended by Rimkus. (Id.).

After these repairs, Vehse hired R.J. Simone Enterprises to perform cosmetic or above-ground repairs to the property. Vehse testified about this during his Examination Under Oath on July 24, 2015. (Doc. # 42-7 at 26). Liberty Mutual paid Vehse for the cosmetic repairs. (Van Hooven Aff. Doc. # 42-3 at ¶ 10). Vehse testified that after R.J. Simone completed its work, all damage to his home had been repaired and no unrepaired damage remained. (Doc. # 42-7 at 27-28).

Liberty Mutual did not renew Vehse's homeowners insurance coverage after July 2012, and Vehse procured homeowners insurance from Citizens Property Insurance Corporation,

without sinkhole coverage. (Doc. # 42-7 at 16). Vehse explained: "I did not [obtain sinkhole coverage] because I figured everything was fixed; so I didn't need it." (<u>Id.</u>).

In June of 2015, years after the effective date of the 2010 Policy with Liberty Mutual, Vehse notified Liberty Mutual of new damage to the home. (<u>Id.</u> at 30). Vehse testified that no damage to the home occurred at his home after the completion of the 2011 repairs until 2015. (<u>Id.</u> at 29-37). He further testified that the cracks at his home were new, rather than re-opening of damage that existed prior to the 2011 repairs. (<u>Id.</u> at 37-38).

## III. <u>Procedural History</u>

On January 21, 2016, Vehse sued Liberty Mutual in state court for breach of contract. (Doc. # 2). Liberty Mutual removed the case to this Court based on complete diversity of citizenship. (Doc. # 1). Vehse filed an Amended Complaint on May 13, 2016, containing two counts for breach of contract. (Doc. # 18).

Vehse asserts in Count One of his Amended Complaint that:

Defendant has materially breached the Policy by: (a) failing to stabilize the land or repair the foundation following a verified sinkhole loss; or failing to pay the policy limits without reduction for the amounts paid for the prior repairs. (b) failing to adjust the subsurface remediation in consultation with the Plaintiff as required by the

> sinkhole endorsement. (c) refusing to pay all amounts due and owing to the Plaintiff under the policy of insurance.

(Doc. # 18 at ¶ 17).   In Count Two, Vehse contends that Liberty Mutual breached the insurance contract because: "Defendant undertook a repair of Plaintiff's Property.   By virtue of Defendant's purported election to repair under the above-referenced insurance contract, a new repair contract arose by implication of law, under which Defendant was bound to restore Plaintiff's home to a pre-loss condition within a reasonable time." (Id. at ¶¶ 27-28).

On May 23, 2016, Liberty Mutual filed its Answer and Affirmative Defenses to Vehse's Amended Complaint. (Doc. # 20).   Among other defenses, Liberty Mutual claims that Vehse's suit "is barred by accord and satisfaction" because "Liberty Mutual has tendered all amounts due under the Policy, and these amounts were accepted by the Plaintiff." (Id. at 4). Liberty Mutual also contends that Vehse "did not suffer damage during the Policy Period" with respect to the damages Vehse is now claiming. (Id.).   As noted, Liberty Mutual seeks summary judgment and Vehse has submitted a procedurally deficient response to the Motion.

IV.  **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the

pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). In addition, this Court has outlined its own mandatory procedures for expediting the summary judgment

process in accordance with Rule 56, which are outlined on its website.

**V.**   <u>**Analysis**</u>

Vehse seeks relief for breach of contract.   The Court applies the law of Florida in this diversity case.   The elements of a breach of contract claim are: (1) the existence of a contract; (2) a breach of the contract; and (3) damages resulting from the breach. <u>Rollins, Inc. v. Butland</u>, 951 So. 2d 860, 876 (Fla. 2d DCA 2006).

Liberty Mutual is entitled to summary judgment for the simple reason that it did not contract for the repairs of the home.   Liberty Mutual does not dispute that a valid contract existed between it and Vehse, the 2010 Policy.   However, the 2010 Policy is an indemnity contract, not a repair contract. The 2010 Policy explains: "(1) We will pay to stabilize the land and building and repair the foundation in accordance with the recommendations of a professional engineer and in consultation with you as under 627.7073." (Doc. # 42-2 at 32). Notably, the 2010 Policy states that this coverage is only for losses that occur during the effective period: "SECTIONS I AND II - CONDITIONS - 1.  Policy Period. This policy applies only to loss . . . which occurs during the policy period." (<u>Id.</u> at 21).

In accordance with the 2010 Policy, Liberty Mutual was responsible to pay for repairs, but not responsible for conducting the repairs itself. That is, the 2010 Policy is an indemnity contract. See Castleberry v. Goldome Credit Corp., 418 F.3d 1267, 1272 (11th Cir. 2005)("[I]nsurance agreements are indemnity agreements.").

Vehse contracted directly with RAB to perform the repairs and Liberty Mutual was not a party to the contract. Liberty Mutual had no relationship with RAB. Liberty Mutual certainly made suggestions to Vehse as to who Vehse should hire to make the repairs, and even solicited bids in an effort to ensure that a qualified contractor was available to render all repairs. However, Vehse independently selected RAB and contracted with RAB to make repairs. As suggested by Liberty Mutual, if Vehse now contends that RAB negligently repaired the land, Vehse should sue RAB, not Liberty Mutual. (Doc. # 42 at 14).

Interestingly, in response to the Motion for Summary Judgment, Vehse argues, "Defendant elected to repair Plaintiff's home which ultimately failed." (Doc. # 46 at 1). Vehse states that there is a material issue of fact as to "whether Defendant elected to repair Plaintiff's home;" but Vehse has supplied no citation to the record to support this

vague contention. (Id.). Vehse also maintains: "Very simply, under Florida law, if an insurer elects to repair damaged property covered under an insurance policy, this creates a new contract under which the insurer is bound to restore the property to its pre-loss condition within a reasonable time." (Doc. # 46 at 6)(citing Nationwide Mut. Ins. Co. v. Chillura, 952 So. 2d 547 (Fla. 2d DCA 2007)).

In no instance does Vehse support his argument that Liberty Mutual elected to repair the property with a citation to the record.  In fact, the record amply demonstrates that Vehse himself hired contractors to make the repairs.  Liberty Mutual was obligated to pay for the repairs made to the property, and it cannot be disputed that Liberty Mutual fulfilled its obligations under the 2010 Policy.  To be sure, this is not a case where insurance coverage has been denied during an insurance policy's effective period based on an insurer's determination that damage was not caused by sinkhole activity.   Here, Vehse reported a sinkhole during the effective period of his 2010 insurance policy, and Liberty Mutual, his insurer, paid for all repairs made to the property.  Now, the period of insurance coverage has ended, and Vehse has not contracted for sinkhole coverage with any insurance company.  This situation cannot be attributed to

Liberty Mutual, a party that fully complied with all of its obligations under a contract that has expired and is no longer in effect.  Vehse has not provided any citation to facts in the record that justify extending liability years after the effective date of the 2010 Policy and years after the termination of the relevant 2010 insurance policy.

The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985)("Conclusory allegations without specific supporting facts have no probative value.").  In sum, Vehse cannot create a genuine issue of material fact merely by stating that such an issue exists.  The Court agrees with Liberty Mutual that "Plaintiff's Response [to the Motion for Summary Judgment] is a self-serving collection of circular arguments." (Doc. # 51 at 1).

When confronted with Vehse's circular and procedurally deficient response to the Motion for Summary Judgment, the Court, in an abundance of fairness, provided Vehse with an opportunity to provide a factual basis for his arguments. Vehse did not avail himself of the opportunity.  Vehse has not identified any genuine issues of material fact, supported by the record, for resolution by a jury.  The Court finds that

Liberty Mutual is entitled to judgment as a matter of law and therefore grants Liberty Mutual's Motion for Summary Judgment.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

(1)  Defendant Liberty Mutual Fire Insurance Company's Motion for Summary Judgment (Doc. # 42) is **GRANTED.**

(2)  The Clerk is directed to enter Judgment in favor of Liberty Mutual and thereafter to close the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>1st</u> day of March, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

-14-