UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GOETZ D. VEHSE,

    Plaintiff,

v.                            Case No. 8:16-cv-599-T-33JSS

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

    Defendant.
_____/

**ORDER**

This cause is before the Court pursuant to Plaintiff Goetz Vehse's Rule 60(b) Motion to Set Aside or Vacate the Summary Judgment Order Based on Excusable Neglect and/or Other Reasons Justifying Relief (Doc. # 59), which was filed on March 3, 2017. Defendant Liberty Mutual Fire Insurance Company filed a Response in opposition to the Motion on March 9, 2017. (Doc. # 60). As explained below, the Motion is denied.

**I.  Background**

Liberty Mutual issued Vehse a homeowners insurance policy # H32-251-404160-100 3 (the 2010 Policy), effective April 12, 2010, to April 12, 2011, for Vehse's home in New Port Richey, Florida. (Doc. # 42-2). The 2010 Policy states that Liberty Mutual will pay for necessary repairs in case of a sinkhole loss that occurs during the effective period. (Id. at 31-32).

On July 20, 2010, adjuster Jeff Pyatt reported a possible sinkhole claim on behalf of Vehse to Liberty Mutual. (Van Hooven Aff. Doc. # 42-3 at ¶ 5). Liberty Mutual, in turn, retained Rimkus Consulting Group, Inc., an independent engineering firm, to investigate Vehse's claim. (Id. at ¶ 6). Rimkus issued a Report dated October 28, 2010, concluding that sinkhole activity existed at Vehse's property and recommended a repair protocol consisting of limited mobility displacement grouting, underpinning of the structure, and polyurethane injections. (Doc. # 42-4).

Rimkus's 2010 Report contained several limitations, including:

> Please be aware that the grouting program is designed and intended to treat only for sinkhole activity. The grouting program is not intended to treat or remediate other detrimental soil conditions that may or may not exist at the site such as buried debris, organic material, expansive (shrink/swell) clays or improper foundation design problems. The homeowner should be aware that compaction grouting may induce additional settlements and additional cracking of the structure before deep soil conditions are stabilized.
> . . . .
> [I]t should also be noted that portions of the observed damage are due to normal settlement, material characteristics, deterioration due to age, etc., and are unrelated to sinkhole activity. As such, it is unrealistic to expect that cracks and separation will never again form in the building after the sinkhole has been remediated, regardless of what method of remediation is performed.

(Id. at 27, 29).

Liberty Mutual identified several available contractors to perform the required repairs, and solicited bids for the work. (Van Hooven Aff. Doc. # 42-3 at ¶ 2). But, Vehse did not choose any contractors suggested by Liberty Mutual. Instead, Vehse retained a company that he located and selected on his own, RAB Foundation Repair, LLC. (Doc. # 42-5). The RAB Foundation Contract is dated November 17, 2010, and specifies: "OBJECTIVE: RAB will provide sinkhole remediation and/or foundation repair services [hereinafter referred to as 'The Work'] at the above-referenced property using the Injection/Pressure Pier and/or Compression Grout System. No purpose, expressed or implied, other than to stabilize the soil, is intended." (Id. at 1).

RAB performed the repairs Rimkus recommended between January and April of 2011, and Rimkus monitored the repairs, as reflected in Rimkus's Report of Findings dated June 9, 2011. (Doc. # 42-6). That Report noted that RAB completed the subsurface grouting program, steel underpinning, and polyurethane injections as recommended by Rimkus. (Id.).

After these repairs, Vehse hired R.J. Simone Enterprises to perform cosmetic or above-ground repairs to the property. Vehse testified about this during his Examination Under Oath

on July 24, 2015. (Doc. # 42-7 at 26). Liberty Mutual paid Vehse for the cosmetic repairs. (Van Hooven Aff. Doc. # 42-3 at ¶ 10). Vehse testified that after R.J. Simone completed its work, all damage to his home had been repaired and no unrepaired damage remained. (Doc. # 42-7 at 27-28).

Liberty Mutual did not renew Vehse's homeowners insurance coverage after July of 2012, and Vehse procured homeowners insurance from Citizens Property Insurance Corporation, without sinkhole coverage. (Doc. # 42-7 at 16). Vehse explained: "I did not [obtain sinkhole coverage] because I figured everything was fixed; so I didn't need it." (Id.).

In June of 2015, years after the effective date of the 2010 Policy with Liberty Mutual, Vehse notified Liberty Mutual of new damage to the home. (Id. at 30). Vehse testified that no damage to the home occurred at his home after the completion of the 2011 repairs until 2015. (Id. at 29-37). He further testified that the cracks at his home were new, rather than re-opening of damage that existed prior to the 2011 repairs. (Id. at 37-38).

On January 21, 2016, Vehse sued Liberty Mutual in state court for breach of contract. (Doc. # 2). Liberty Mutual removed the case to this Court based on complete diversity of citizenship. (Doc. # 1). Vehse filed an Amended Complaint on

-4-

May 13, 2016, containing two counts for breach of contract. (Doc. # 18).

On May 23, 2016, Liberty Mutual filed its Answer and Affirmative Defenses to Vehse's Amended Complaint. (Doc. # 20). Among other defenses, Liberty Mutual claims that Vehse's suit "is barred by accord and satisfaction" because "Liberty Mutual has tendered all amounts due under the Policy, and these amounts were accepted by the Plaintiff." (Id. at 4). Liberty Mutual also contends that Vehse "did not suffer damage during the Policy Period" with respect to the damages Vehse is now claiming. (Id.).

## II. **Summary Judgment Proceedings**

On December 14, 2016, Liberty Mutual filed a timely and procedurally compliant Motion for Summary Judgment. (Doc. # 42). The Motion contained a Statement of Material Facts and supported each fact with a citation to the record. Liberty Mutual provided the Court with an index of its exhibits and organized the exhibits in an effort to streamline the summary judgment process. (Doc. # 42-1). On January 17, 2017, Vehse filed a response to the Motion and attached a single exhibit. (Doc. # 46). Vehse's submission did not include a response to Liberty Mutual's Statement of Material Facts. On January 25,

2017, Liberty Mutual filed its Reply Memorandum. (Doc. # 51). Therein, Liberty Mutual commented:

> Plaintiff failed to respond to Liberty Mutual's Statement of Material Facts in the manner required by this Court. The Court's website, www.flmd.uscourts.gov/judicialInfo/Tampa/jgCovington.htm, instructs civil litigants that motions for summary judgment must include a section titled "Statement of Material Facts" and listing each fact in a separate numbered paragraph. A response, in turn, must include a section titled "Response to Statement of Material Facts" that admits or denies each fact in correspondingly numbered paragraphs.

(Doc. # 51 at 2).

When confronted with the Motion for Summary Judgment, Response, and Reply, the Court agreed that Vehse failed to carry his burden at summary judgment. However, rather than simply granting Liberty Mutual's Motion for Summary Judgment based on Vehse's factually deficient response, the Court entered a detailed Order explaining exactly what Vehse needed to do and giving Vehse sufficient time in which to complete the task.

Specifically, on February 23, 2017, this Court entered an Order explaining that Vehse's response to Liberty Mutual's Motion for Summary Judgment was procedurally deficient. (Doc. # 56). The Court noted that Liberty Mutual's "Motion for Summary Judgment fully complies with the undersigned's directives regarding a Statement of Material Facts.

-6-

Specifically, Liberty Mutual outlines 35 specific Material Facts." (Id. at 1). However, Vehse's Response to the Motion for Summary Judgment "is a 'non-response' when it comes to either admitting or denying Liberty Mutual's factual contentions." (Id. at 2). The Court's practices and procedures, which are prominently displayed on the Court's website, require a party opposing a Motion for Summary Judgment to

> **include a specifically captioned section titled, "Response to Statement of Material Facts." The opposing party's response must mirror the statement of material facts by admitting and/or denying each of the moving party's assertions in matching numbered paragraphs. Each denial must set forth a <u>pinpoint</u> citation to the record where the fact is disputed. Although the opposing party's response must correspond with the paragraph scheme used in the statement of material facts, the response need not repeat the text of the moving party's paragraphs. In deciding a motion for summary judgment, <u>the Court will deem admitted any fact in the statement of material facts that the opposing party does not specifically controvert, provided that the moving party's statement is supported by evidence in the record.</u>**

(Id.).

Here, the Court warned Vehse that it would be acting well within its discretion to grant Liberty Mutual's Motion for Summary Judgment based on Vehse's deficient response, but in an abundance of fairness, granted Vehse the opportunity to

-7-

conform to the Court's procedures. The Court directed Vehse "to file a submission admitting or denying Liberty Mutual's factual allegations, with citation to the record, by **February 28, 2017**." (Id. at 3).

Vehse did not file anything in response to the Court's Order. Thereafter, on March 1, 2017, the Court entered an Order granting Liberty Mutual's Motion for Summary Judgment. (Doc. # 57). The Court's Order largely relied on Liberty Mutual's Statement of Material Facts because the facts were supported by the record and because Vehse failed to rebut them.

After outlining the material facts, the Court found that Liberty Mutual was entitled to judgment as a matter of law because, among other reasons, it did not contract for the repairs of the home. "The 2010 Policy is an indemnity contract, not a repair contract." (Id. at 10). In accordance with the 2010 Policy, Liberty Mutual was responsible to pay for repairs, but not responsible for conducting the repairs itself. Vehse contracted directly with RAB to perform the repairs and Liberty Mutual was not a party to the contract. Liberty Mutual had no relationship with RAB. Liberty Mutual certainly made suggestions to Vehse as to who Vehse should hire to make the repairs, and even solicited bids in an effort

to ensure that a qualified contractor was available to render all repairs. However, Vehse independently selected RAB and contracted with RAB to make repairs. As suggested by Liberty Mutual, if Vehse now contends that RAB negligently repaired the land, Vehse should sue RAB, not Liberty Mutual. (Doc. # 42 at 14).

The Court also explained: "Vehse has not provided any citation to facts in the record that justify extending liability years after the effective date of the 2010 Policy and years after the termination of the relevant 2010 insurance policy." (Id. at 13). The Clerk entered Judgment in favor of Liberty Mutual on March 2, 2017, and thereafter closed the case. (Doc. # 58). At this juncture, Vehse seeks an Order vacating the Court's Summary Judgment Order, explaining that a malware attack on his law firm's server caused Vehse to miss the February 28, 2017, deadline to rebut Liberty Mutual's Statement of Material Facts.

### III. **Legal Standard**

Federal Rules of Civil Procedure 59(e) and 60 govern motions for reconsideration. Ludwig v. Liberty Mutual Fire Ins. Co., Case No. 8:03-cv-2378-T-17MAP, 2005 U.S. Dist. LEXIS 37718, at *6 (M.D. Fla. Mar. 30, 2005). The time when the party files the motion determines whether the motion will be

evaluated under Rule 59(e) or Rule 60. <u>Id.</u>  A Rule 59(e) motion must be filed within 28 days after the entry of the judgment.  Motions filed after the 28-day period will be decided under Federal Rule of Civil Procedure 60(b).

As stated in <u>Florida College of Osteopathic Medicine, Inc. v. Dean Witter Reynolds, Inc.</u>, 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998), "A motion for reconsideration must demonstrate why the court should reconsider its past decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Further, "in the interests of finality and conservation of scarce judicial resources, reconsideration is an extraordinary remedy to be employed sparingly." <u>Lamar Adver. of Mobile, Inc. v. City of Lakeland</u>, 189 F.R.D. 480, 489 (M.D. Fla. 1999).

Likewise, Rule 60(b), Fed. R. Civ. P., is available to relieve a party from a final judgment or order for the following reasons:

    (1)  mistake, inadvertence, surprise, or excusable neglect;
    (2)  newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
    (3)  fraud . . . misrepresentation, or misconduct by the opposing party;
    (4)  the judgment is void;
    (5)  the judgment has been satisfied . . .; or
    (6)  any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Whether asserted under either Rule 59 or 60, "a motion for reconsideration is not the proper forum for the party to vent dissatisfaction with the Court's reasoning." Ludwig, 2005 U.S. Dist. LEXIS 37718, at *11 (internal citation omitted).

**IV. Excusable Neglect Not Demonstrated**

Vehse is represented by the law firm of Smith, Kling, & Thompson, P.A. Vehse's counsel maintain that this Court should vacate its Order granting summary judgment in favor of Liberty Mutual because "on February 21, 2017, a malware attack compromised the Smith, Kling & Thompson, P.A. ('SKT') server and email system." (Doc. # 59 at 2). A SKT partner was informed of the malware attack "the same day." (Id.). The very next day, February 22, 2017, "all backups dating back to October were analyzed and motions were put into place to upload and clean backup of the site to the hosting server." (Id.). On February 23, 2017, the same day that the Court issued its Order providing Vehse with direction and an opportunity to comply with regard to summary judgment procedures, Vehse's law firm "migrated across to [a] new server." (Id.). According to SKT, "[d]uring this propagation period no one would have been able to access smithkling.com

-11-

nor could any email attach to this domain name and be received by the firm." (Id.).

"[E]verything appeared to be working as expected and the site was back up and running" on February 23, 2017. (Id.). But, on February 27, 2017, "it was brought to the firm's attention that emails were not being received." (Id. at 3). "Despite rectification of the error," SKT maintains "there was no way to know which, if any, emails the smithkling domain rejected while the site and server were down. As a consequence, SKT did not receive the February 23, 2017 Order requesting that Plaintiff file the requested submission." (Id.).

Vehse argues that these circumstances amount to excusable neglect. Excusable neglect is "a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 392 (1993). This Court's determination is guided by four factors, each outlined in Pioneer: "the danger of prejudice to the [nonmovant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id. at 395.

Vehse missed a Court deadline due to a problem with its email server. Yet, in his Motion to Vacate, counsel discuss factually inapposite cases. For instance, in the Argument section of the Motion, Vehse discusses Brother v. Rossmore Tampa Limited Partnership, No. 8:03-cv-1253-T-24MAP, 2004 U.S. Dist. LEXIS 28524, at *5 n.2 (M.D. Fla. Aug. 19, 2004)(finding excusable neglect in an ADA access case when plaintiff's attorney failed to file a response to motion for summary judgment due to a calendaring error: "Plaintiff's counsel states that he calendared the motion on his computer and when the to-do reminder appeared, he confused the instant case with one of the other 70 cases in which Steven Brother is a plaintiff.") and Cheney v. Anchor Glass Container Corp., 71 F.3d 848, 850 (11th Cir. 1996)(finding excusable neglect in an age discrimination case when, after an arbitration, a secretary failed to inform lead counsel of a deadline for moving for a new trial). Vehse does not discuss any cases in which a deadline was missed due to a malware attack or a firm's server being "down."

In contrast, Liberty Mutual directs the Court's attention to Yeschick v. Mineta, 675 F.3d 622 (6th Cir. 2012), which affirmed a district court's denial of a Rule 60(b) motion -- finding no excusable neglect. There, the defendant moved for

-13-

summary judgment and the plaintiff failed to respond. Id. at 624. The court adopted the undisputed facts advanced by the defendant and granted the motion for summary judgment. Id. at 627. Similar to the arguments asserted in the present case, the plaintiff's attorney moved to vacate the summary judgment order explaining that email notification from the court "bounced" because his "original email address on file with the Clerk of the Court was an 'alltel.net' email address [and] in 2009, all alltel.net email addresses became 'windstream.net' addresses." Id. at 627.

The Yeschick court explained why the email mistake could not constitute excusable neglect: "Now that electronic dockets are widely available, the burden imposed by this affirmative duty [to monitor the docket] is minimal. Attorneys may monitor the docket from the comfort of their offices; they simply need to log-on to the CM/ECF system from a computer." Id. at 629.

The circumstances described in Yeschick are similar to the present server malware attack. In both cases, the attorney responsible for appropriately responding to a well supported motion for summary judgment did not receive electronic notification of a relevant court filing. As in Yeschick, Vehse's counsel did not meet the affirmative duty to

-14-

monitor the docket, or he would have learned of the Court's February 23, 2017, Order. Even if Vehse's counsel's failure to receive notice of the February 23, 2017, Order, was outside of his control, counsel nevertheless had a duty to monitor the docket in this active case, regardless of any separate issue taking place with the law firm server. Any reasonable attorney confronted with knowledge that his or her email is compromised would monitor the docket in his or her cases to ensure that no deadlines are missed.

This Court has considered the Pioneer factors and determines that they do not weigh in favor of an excusable neglect finding. The danger of prejudice to Liberty Mutual would be great if the Court were to vacate its summary judgment order and Judgment in favor of Liberty Mutual. The Court has conducted a complete summary judgment analysis with a ripe motion for summary judgment and over 600 pages of relevant exhibits on file. It would be extremely prejudicial to Liberty Mutual to vacate an Order in its favor and re-open summary judgment now that the Court's analysis and reasoning has been revealed. The Court provided Vehse with a second bite of the proverbial apple prior to the entry of summary judgment. The Court declines to extend the invitation to weigh in on these matters after (1) entry of a detailed

summary judgment Order; (2) entry of the Clerk's Judgment in a Civil Case; and (3) case closure. "Litigation must come to an end." Gary v. Ga. Diagnostic Prison, 686 F.3d 1261, 1275 (11th Cir. 2012).

In addition, the length of the delay militates against a finding of excusable neglect. Although Vehse concentrates on the delay between the Court's February 23, 2017, warning Order regarding Vehse's deficient response and the March 1, 2017, Order granting summary judgment, review of the file reveals that Vehse was placed on notice regarding his deficient response much earlier. Liberty Mutual's Reply (Doc. # 51), filed on January 25, 2017, plainly and correctly states: "Plaintiff failed to respond to Liberty Mutual's Statement of Material Facts in the manner required by this Court." (Id. at 2). Liberty Mutual even quoted the consequences the Court imposes, namely that it "will deem admitted any fact in the statement of material facts that the opposing party does not specifically controvert, provided the moving party's statement is supported by evidence in the record." There is no indication that the SKT server was down on January 25, 2017, when Liberty Mutual's Reply was filed.

As stated by Liberty Mutual: "Plaintiff could have requested leave from the Court to file a Response to the

Statement of Material Facts. Plaintiff also could have contacted Liberty Mutual's counsel and requested that the undersigned stipulate to an order allowing Plaintiff to file the Response. Instead, Plaintiff's counsel sat idle for more than a month. Plaintiff has not argued, and cannot argue, that this month-long failure to at least try to rectify this shortcoming was caused by excusable neglect." (Doc. # 60 at 9).

Liberty Mutual posits that Vehse's counsel did not act in good faith and even suggests that Vehse's counsel violated Rules 4-1.1 and 4-1.3 of the Rules Regulating the Florida Bar. Although the Court is not prepared to make a finding of bad faith, the Court can hardly characterize the situation presented as a good faith attempt to rectify a technological problem. Affidavits filed by SKT attorneys and staff describe technical difficulties encountered due to a malware attack. However, all of the good faith in the world cannot stand in the place of an attorney's duty to monitor the docket. "Even a lack of notice of the entry of an order does not constitute excusable neglect, as it is the party's affirmative duty to monitor the dockets." Duncan v. Bucciarelli, No. 07-13114-WHD, 2010 Bankr. LEXIS 1543, at *3 (N.D. Ga. Bankr. Apr. 28,

2010)(internal citation omitted). The Court thus denies the Motion.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

Plaintiff Goetz Vehse's Rule 60(b) Motion to Set Aside or Vacate the Summary Judgment Order Based on Excusable Neglect and/or Other Reasons Justifying Relief (Doc. # 59) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>10th</u> day of March, 2017.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE